UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY J. BRITTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 1956 DDN |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Terry J. Britton is not disabled and, thus, not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is remanded for further proceedings.

## BACKGROUND

Plaintiff was born on November 1, 1967. (Tr. 290). He protectively filed his application for a period of disability and DIB on March 28, 2014, alleging a disability onset date of February 13, 2014. (Tr. 214-15). Plaintiff alleges that he suffers from left knee strain, spurs at the C5-6 and C6-7 vertebra, neck pain, right shoulder strain, left shoulder strain, chronic tendonitis of the left ankle, arthritis of the right ankle, depression, anxiety, panic attacks, obesity, sleep apnea, and heart murmur. (*Id.*) Plaintiff's

application was denied on August 5, 2014, and he requested a hearing before an administrative law judge ("ALJ"). (Tr. 225, 235).

A hearing was held on May 17, 2016, where plaintiff and a vocational expert ("VE") testified. (Tr. 184). By decision dated June 6, 2016, the ALJ found that plaintiff was not disabled under the Social Security Act. (Tr. 165). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national economy. *Id.*

On June 16, 2016, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner to be reviewed in this case. (Tr. 1). Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is inconsistent with the Social Security Act, its regulations, and applicable case law. (Doc. 13). He asks that the ALJ's decision be reversed and an award of benefits entered or that the case be remanded for further proceedings. *Id.*

**A. Relevant Medical History**

On January 24, 2013, plaintiff complained of chronic pain and received a left-shoulder MRI scan, which found tendinopathy of the subscapularis, supraspinatus, and infraspinatus tendons, fluid in the subscapularis recess, edema of the subacromial fat, and degenerative changes in the acromioclavicular joint. A scan of the right shoulder showed mild degenerative changes in the acromioclavicular joint, a small partial tear along the superior superficial fibers of the subscapularis tendon, and very minimal tendinopathy of the supraspinatus and infraspinatus tendons. Further scanning of the lumbar spine revealed mild lumbar spondylosis most pronounced at L4-5. (Tr. 170).

On February 13, 2014, plaintiff slipped on icy ground and fell onto his back. On February 17, 2013, he sought treatment from Yusuf M. Chaudhry, M.D. Dr. Chaudhry evaluated plaintiff's Body Mass Index (BMI), making a finding of 42.58 (morbid obesity). Plaintiff was issued Ultram and Zanaflex for back pain. On February 24, 2014, plaintiff returned with complaints of increased back pain. Physical examination revealed

some paraspinal muscle spasm. Cervical spine x-rays showed some degenerative changes and C7 inferior endplate partially obscured by thick shoulder soft tissues. Plaintiff was diagnosed with back pain, degenerative joint disease, degenerative disc disease, and obesity; he was given Robaxin and Gralise for back pain, as well as counseling on smoking cessation, exercise, and weight management. On February 27, 2014, Dr. Chaudhry made follow-up diagnoses of tendinitis and bursitis, and directed plaintiff to use Motrin for them. (Tr. 171).

Plaintiff received treatment from March 19 through May 31, 2014, from Ramis Gheith, M.D., at the Interventional Pain Institute. Dr. Gheith initially diagnosed lumbosacral spondylosis without myelopathy, lumbago, other symptoms referable to the back, other unspecified back disorder, cervical spondylosis without myelopathy, cervicalgia, pain in joint regions of the shoulders, and osteoarthrosis. Dr. Gheith prescribed medications including Gabapentin, Tramadol, Tizanidine, Motrin, Ibuprofen, and Naproxen; he also prescribed physical therapy and a home exercise program. Plaintiff reported in May that these treatments were unsuccessful. Dr. Gheith subsequently ordered that plaintiff be fitted for an LSO back brace, but encouraged plaintiff to maintain normal physical activity despite ongoing pain so as to prevent muscle atrophy. (Tr. 171).

**B. Evidentiary Hearing**

At the evidentiary hearing in May 2016, plaintiff testified that he had been seeing Dr. Chaudhry since 2008. He continued to take prescribed medications including Tramadol, Tizanidine, Gabapentin, and Venlafaxine. He wore braces to reinforce his ankles and periodically employs a back brace and a cane for balance. He uses a TENS unit to apply electrical impulses to regulate and diminish pain. Plaintiff testified that his daily activities included putting a family dog out into the yard on an extended leash, preparing meals for himself, occasional driving, reading, using his smartphone for internet browsing, and watching television. Plaintiff testified that his wife and son currently live with him, while his daughter does not. Plaintiff testified that he shops for

3

his family twice a month, attends lodge meetings twice a month, and does his laundry once a week. He mows the lawn using a push mower, but requires up to two hours to do so, with three or four breaks for rest. He testified that "if I move [my left arm] certain directions or try to lift something the wrong way, it's a very, very sudden and sharp pain." (Tr. 190-97).

Vocational Expert Darrell Taylor testified that, based on plaintiff's prior work in the United States Army and National Guard, there were no equivalent civilian positions sufficiently analogous as to constitute past relevant work ("PRW") within the meaning of the Social Security Act. (Tr. 209-10). The ALJ accepted this testimony and presented the VE with the following hypothetical:

> [Assume] a hypothetical individual of the Claimant's age, education, with past work history but not necessarily past work history that's classified at this point, who is capable of work at the light exertional level with respect to the lifting and carrying requirements. However, he can stand and walk for two hours during the day, and sit for six hours during the day. He can occasionally climb ramps and stairs, stoop and crouch, never ladders, ropes or scaffolds, kneeling or crawling, he can occasionally reach overhead with his left upper extremity. And he can frequently lift overhead with his right upper extremity, lift and reach, excuse me. He would require a cane for balance when ambulating about the workspace. Since we don't have an ability to classify the past work, how about other work in the national economy then?

*Id.* at 210. The VE testified that such a person would be limited to sedentary, unskilled work, such as that of a hand packer, production worker assembler, or surveillance-system monitor. The VE testified that there are approximately 22,000, 17,000, and 29,000 such positions nationwide, respectively. *Id.* at 210-11. After asking the VE to confirm that his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"), the ALJ asked him to opine on the effect that missing work in excess of two days per month would have on such an individual's employable status. The VE testified that that would soon result in termination. The VE further testified, in response to questioning from plaintiff's counsel, that an individual who needed to lay down or prop up his legs for up

4

to 50 percent of the day would also be precluded from competitive work. Finally, in response to subsequent questioning by the ALJ, the VE testified that the jobs described would be amenable to sit-stand options, provided they took place at 30-minute intervals and did not interfere with pace or production. (Tr. 211-12).

### C. ALJ Decision

The ALJ first found that plaintiff meets the insured-status requirements of the Social Security Act through December 31, 2018. (Tr. 170). She found that plaintiff has not engaged in substantial gainful activity since his alleged onset date. *Id.* She also found that plaintiff suffers from the severe impairments of degenerative disc disease, obesity, ankle instability, and degenerative joint disease of the left shoulder. *Id.* However, she concluded that none of these impairments met or equaled an impairment listed in the Commissioner's regulations. *Id.* Based on plaintiff's past military work history, the ALJ found that he did not have past relevant work ("PRW") within the meaning contemplated by the Social Security Act. (Tr. 177, 209-210).

The ALJ determined that plaintiff retained the residual functioning capacity ("RFC") for:

> . . . light work . . . except: he can stand and walk for 2 hours during the day and sit for 6 hours during the day; he can occasionally climb ramps and stairs, stoop and crouch; he should never climb ladders, ropes or scaffolds, kneel or crawl. He can occasionally lift and reach overhead with his left upper extremity; he can frequently lift and reach overhead with his right upper extremity. He would require a cane for balance when ambulating about the workspace and would need to alternate between sitting and standing every 30 minutes for 1-3 minutes but would still be on task.

(Tr. 173-174).

Relying on the vocational expert's testimony, the ALJ found plaintiff retained sufficient RFC to perform the jobs of surveillance system monitor, hand packer or bander, and assembler. (Tr. 177, 210-11). The DOT references these jobs as DOT 379.367-010, DOT 920.687-030, and DOT 739.687-066, respectively. In making this

5

determination, the ALJ considered the objective medical evidence in the record, the VE's opinion evidence, and plaintiff's allegations and testimony. (Tr. 174).

## STANDARD OF REVIEW

In reviewing the denial of Social Security disability benefits, the Court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically-determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(a); *Pate-Fires*, 564 F.3d at 932 (describing the five-step process).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). *Id.* at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the

Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

# **DISCUSSION**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, plaintiff argues that (1) the ALJ's determination that plaintiff could work as a hand packer or as an assembler relied on incorrect testimony from the vocational expert, which the ALJ failed to identify and address; (2) the ALJ's determination that plaintiff could work as a surveillance-system monitor did not properly consider plaintiff's prescribed pain medication, which possesses "narcotic-like" effects; and (3) the ALJ did not properly address whether the jobs at issue exist in significant numbers "in the national economy," as defined for purposes of the Social Security Act. (Doc. 13).

### **A. The ALJ failed to identify and resolve discrepancies between the VE's testimony and the DOT regarding hand banders and assemblers.**

The DOT describes the duties of hand banders and assemblers as follows:

> Wraps trademark band around cigars: Moistens or applies paste to tip end of band and presses ends of band together around cigars. Places banded cigars aside for further processing… Reaching: Constantly – Exists 2/3 or more of the time[.]

> Joins upper and lower halves of vanity compacts: Inserts pins in hinges to join halves, using fingers or tweezers. Attaches spring catch lock by pressing it into place with pinching tool. Fits mirror on inside of cover… Reaching: Frequently – Exists from 1/3 to 2/3 of the time[.]

DICOT 920.687-030, 1991 WL 687968; DICOT 739.687-066, 1991 WL 680189.

Neither of the DOT descriptions identify the direction of such reaching. The ALJ found that plaintiff possessed the RFC to "occasionally lift and reach overhead with his

7

left upper extremity; [and] he can frequently lift and reach overhead with his right upper extremity[.]" (Tr. 174). Defendant argues that "it is clear from the description of the job[s] that the reaching would likely be in front of the worker and not overhead" and that plaintiff could accomplish any needed overhead reaching by relying on his right arm. (Doc. 18 at 8).

The Court declines to join defendant's assumptions. Instead, the Court infers that "reaching," lacking further definition, implies the ability to reach with both upper extremities in any direction. This result is consistent with prior Eighth Circuit case law; *see Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (holding that "clearing tables," as description of job, did not address the direction of required reaching, and that where plaintiff could only occasionally perform overhead reaching bilaterally, it was reversible error for the ALJ not to resolve apparent conflict between job description and VE's testimony).

The ALJ's hypothetical question included her findings as to plaintiff's RFC. (Tr. 210). She erred in not resolving the apparent conflict between the DOT's descriptions of these jobs and the testimony of the VE describing plaintiff's ability to adapt to them. On remand, the ALJ must reformulate an appropriate hypothetical question for the VE. Within the scope of the VE's knowledge, the record should be further developed to show whether these jobs (1) only require reaching in specific directions, and (2) whether they require reaching with either or both upper extremities.

### B. The ALJ erred in not considering the effects of plaintiff's pain medication on his current suitability for work as a surveillance-system monitor.

The DOT describes the duties of a surveillance-system monitor as follows:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed-circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is

> developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair services of equipment malfunctions.

DICOT 379.367-010, 1991 WL 673244. However, this DOT entry was last updated in 1986; *see* https://goo.gl/RgieT8. In the aftermath of the terrorist attacks on the World Trade Center and Pentagon on September 11, 2001, federal law created the Transportation Security Administration ("TSA") to regulate security and screening operations for airports and other transportation facilities. 49 U.S.C. § 114(a-h). The new federal standards for surveillance system monitors included the ability to "demonstrate daily a fitness for duty *without any impairment* due to illegal drugs, sleep deprivation, *medication*, or alcohol." 49 U.S.C. § 44935(e)(2)(v) (emphases added); *see also Yeager v. Chertoff*, 2006 WL 4673439, at *1 (W.D. Wash. 2006).

Plaintiff testified that Tramadol produces drowsiness, among other side effects. (Tr. 191, 404). He testified that this drowsiness can, and does, reach the point of falling asleep multiple times throughout the day. (Tr. 200). The ALJ found generally that "[plaintiff] is not prescribed narcotic pain medications[,]" but did not articulate the basis on which she found Tramadol to be other than "narcotic" given its characteristics as described. (Tr. 175).

Plaintiff submitted a scholarly article in support of the proposition that the position of surveillance-system monitor no longer exists as described by the DOT. (Doc. 13, Ex. 1; Dan Wolstein, *Surveillance-system Monitors in the Work Force Kincaid Vocational and Rehabilitation Services*, 16 Journal of Forensic Vocational Analysis 49 (Winter 2016)). The research described in the article found that of the 58 sample positions studied, *each of them* required physical or mental duties substantially in excess of those contained in the DOT's description. *Id.* at 51-52. Furthermore:

> The vast majority of job openings called for, at the very least, patrolling and walking to a significant degree. At the most, the job openings reviewed called for lifting of up to 200 lbs., or responding to emergencies, such as apprehending shoplifters… The nature of the duties described above is

> much more closely associated with that of Merchant Patroller (D.O.T.: 372.667-038), with the addition of being required to surveil closed-circuit television systems. Merchant Patrollers are categorized into light level job duties with a specific vocational preparation of 3, or semi-skilled work.

*Id.* at 54.

This article was not published at the time of the ALJ's hearing. An ALJ properly relies on a VE, and by extension on the VE's knowledge of the DOT, to develop the record and supplement her legal knowledge with relevant facts. That the entry for surveillance-system monitor has not been appropriately updated to reflect new regulations after September 11, 2001, is not attributable to the ALJ, nor would it be reasonable to expect knowledge of research that had not yet been published. On these facts, however, and particularly in light of the disposition of this case on plaintiff's first argument, it is appropriate to remand this issue for further development of the record.

On remand, the ALJ must question the VE as to whether plaintiff's RFC would permit successful adjustment to a job equivalent in scope to that of Merchant Patroller, with the additional requirement of having to surveil closed-circuit television systems. The ALJ should also specifically address the impact of plaintiff's prescribed pain medication if any, on plaintiff's eligibility for surveillance-system monitor positions.

**C. The ALJ erred in relying on VE testimony regarding job-incidence data.**

Step Five of the sequential disability evaluation requires that the Commissioner provide "evidence that demonstrates that other work exists in significant numbers in the national economy that [plaintiff] can do[.]" 20 C.F.R. § 404.1560(c)(2). The ALJ called upon the VE to testify as to the availability of the jobs discussed above. (Tr. 210-11). However, "significant numbers in the national economy" as applied in the context of Social Security claims is a specific term of art: "'work which exists in the national economy' means work which exists in significant numbers where [the plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1560(c)(1). The VE's testimony improperly provided only a sum total of jobs

nationwide and no regional data. While the statute and regulations do not maximize plaintiff's convenience in actually finding a job, they will not permit an abstract total of jobs nationwide without some regional reference.

In all other authoritative cases where number of jobs in the national economy has been at issue, the VE has provided local or regional figures in addition to national ones. *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *Bjornholm v. Shalala*, 39 F.3d 888, 890 (8th Cir. 1994); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988). However, in this case, the VE testified only about the national positions: 22,000 hand packer jobs nationwide; 17,000 production worker assembler jobs nationwide; and 29,000 surveillance-system monitor jobs nationwide. (Tr. 210-11). Plaintiff's specific argument has not yet been addressed by the United States Court of Appeals for the Eighth Circuit. As the case is being remanded on the other issues plaintiff has already raised, the Court directs the ALJ to also develop the record to show whether the jobs discussed above, assuming they are still found to be within plaintiff's RFC, exist in significant numbers "where [plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

## CONCLUSION

For the reasons set forth above, the final decision of the Commissioner of Social Security is reversed and remanded for further proceedings not inconsistent with this opinion. An appropriate Judgement Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 11, 2018.

11